Turney, J.,
delivered tbe opinion of tbe court:
Tbe plaintiff in error was indicted in tbe circuit court of OaiToll county for tbe murder of Ed. Smith; was convicted. of voluntary manslaughter, and sentenced to tbe penitentiary for a term of ten years. His motion for a new trial b.eing overruled, be has appealed to this court.
Tbe first error rebed upon is: “Because tbe officer in charge of tbe jm*y was not sworn to keep tbe jury separate and apart from all other citizens, and because be was not sworn not to talk with tbe jury himself.”
It is tbe universal practice as well as the law of tbe *597 state, that the officer in charge of the jury shall be sworn “to keep the jury separate and apart from other citizens; that he will suffer none to speak to them, nor will he-speak to them himself upon the subject of their consideration further than to ask them whether they are agreed.” It is the duty of the court not only to see that this oath has been administered, but to instruct the officer as to his duty in the premises.
The practice of administering such oath is derived from the common law, and is an indispensable safe-guard thrown around the life and liberty of the accused, and the interests and.welfare of the state and society — one that cannot in safety to either be dispensed with or too rigidly enforced.
It is one of the means by which the law undertakes to secure to the accused a fair and impartial trial by a jury of honest and lawful men forming their opinions for themselves upon the facts detailed in evidence tried by the law and uninfluenced by improper opinion or prejudice, and without exposure to the manipulations, directly or indirectly, applied of designing or interested parties on the inside [outside].
In the present case while the motion for new trial was being argued, and, of course, after the grounds for the motion had been made known, an attorney for the prosecution offered, read and filed the affidavit of the officer who had had charge of the jury, “that he had been solemnly charged by the court to keep said jury together and apart from all other persons.
“That he had fully performed said duty, and that they did not separate, nor did they, or either of them, have any communication with any other person.”
In view of the fact that the affidavit was intended to meet the grounds for a new trial, its omission to state that the officer himself had had no communication with the jury upon the matter of their consideration is significant. *598 "With this pregnant silence prominently before ns, are we to presume that there was no irregularity or improper conduct, or are we to infer the omission was of purpose, and with a view to conceal. The fact is sufficient to arouse the jealousy with which the purity of trials in state cases is watched.
We know that during the progress of the trial, and while the case is being brought out to the jury, the officer who has charge of it in its retirements, is mixing in the community and with bystanders: that he is hearing discussed and is discussing the facts of the case; that he fully understands public opinion; that with him every other thought gives way to these matters, and his mind being full of and constantly occupied with them, nothing can be more natural than that being unrestrained by the high obligation of an oath, he will communicate to the jury, or some of them, the impressions made upon him, and their sources -of derivation, as well as the comments and expressions of opinion of the public as he has- heard and understood them from time to time.
The law requires the jurors shall be of men wbu have not formed or expressed opinions, and whn are to form their opinions alone from the evidence. Now, if the influences indicated are brought to bear, can it be possible that the verdict of the jijry is based alone on the eviden.ee, uninfluenced by the conduct and conversation of others.
In McCann v. The State, 2 Morris, State Cases (Miss.), Judge Thacker, discussing this question, says: “The evil to be guarded against is improper influence; and when an exposure to such influence is shown, and it is not shown that it failed to affect, then the presumption is against the purity of the verdict.
“If the irregularity has a tendency to affect the rights of the party, it is sufficient to warrant its being set aside.”
The attorney-general argues the facts warrant the conviction, and, therefore, the judgment should be- affirmed. *599 We know nothing of the facts on the merits, nor are we authorized to learn them for any purpose of the present inquiry.
It is our province to see not only that justice has been done, but to see also that it has been done according to the forms and requirements of law. The, question discussed meets us at the threshhold of the case, and is conclusive of our duty.
Reverse the judgment.